FILED
CLERK, U.S. DISTRICT COURT
JUL - 6 2023
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-0721
        Facsimile: (213) 894-0141
7       E-mail:    John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE EXTRADITION OF | No. 2:23-mj-03275 |
|---|---|
| BRYANT RIVERA,<br>  aka "Eduardo," | GOVERNMENT'S REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS; [Proposed] ORDER |
| A Fugitive from the Government of the United Mexican States. | |

Plaintiff, United States of America, by and through its counsel of record, the United States Attorney, hereby submits its request for detention pending further extradition proceedings, a memorandum of points and authorities in support of that request.

Dated: July 6, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/ John J. Lulejian
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This is an extradition matter. The Government of the United Mexican States ("Mexico") has transmitted to the United States a request for the provisional arrest and extradition of the fugitive, BRYANT RIVERA, also known as "Eduardo" ("RIVERA"), so that he may stand trial for the crime of Femicide, as defined by Article 129 of the Penal Code of the State of Baja California, Mexico.[1] (See Docket No. 1.)

In its extradition request, Mexico alleges that on or about January 24, 2022, RIVERA killed Ángela Carolina Acosta Flores by strangulation and left her body in a hotel room that they shared. (See id.)

**II. PROCEDURAL BACKGROUND**

In accordance with its extradition treaty obligations, the United States filed a Complaint for Provisional Arrest with a View Toward Extradition in this Court on June 29, 2023. (See id.) On that same day, the Honorable Charles F. Eick, United States Magistrate Judge for the Central District of California, issued a warrant for RIVERA's arrest. The arrest warrant was executed on July 6, 2023.

**III. ARGUMENT**

Like the extradition process as a whole, the determination of whether to release a fugitive on bail is sui generis. The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 et seq., do not provide for bail. Further, the Bail Reform

---

[1] This offense also is referred to as Feminicide.

Act, 18 U.S.C. §§ 3141 et seq., does not apply because an extradition proceeding is not a criminal case.[2] See Kamrin v. United States, 725 F.2d 1225, 1228 (9th Cir. 1984); In re Extradition of Perez-Cueva, No. 16-MJ-0233, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016). Rather, case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." United States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

**A.   Applicable Law**

    1.   A Strong Presumption Against Bail Governs in an International Extradition Proceeding

Unlike in domestic criminal cases, "[t]here is a presumption against bail in an extradition case." Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989); see also United States v. Snyder, No. 13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting that presumption against bail in extradition is "well-established"). The Supreme Court established this presumption against bail in Wright v. Henkel, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the

---

[2] The Bail Reform Act applies only to "offenses" in violation of United States law that are triable in the courts of the United States. See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Here, RIVERA is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with an offense committed in violation of the law of the requesting state, Mexico.

>surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. 40, 62 (1903); accord Jimenez v. Aristiguieta, 314 F.2d 649, 653 (5th Cir. 1963) ("No amount of money could answer the damage that would be sustained by the United States were the appellant to be released on bond, flee the jurisdiction, and be unavailable for surrender, if so determined. The obligation of this country under its [extradition] treaty with Venezuela is of paramount importance."); United States ex rel. McNamara v. Henkel, 46 F.2d 84, 84-85 (S.D.N.Y. 1912) (presentation of forfeited bail to foreign nation "is ridiculous, if not insulting").

The prudential reasons for this presumption against bail in international extradition cases are clear and compelling. When, as here, a requesting country meets the conditions of the applicable extradition treaty, the United States has an "overriding interest in complying with its treaty obligations" to deliver the fugitive. In re Extradition of Garcia, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); see also Wright, 190 U.S. at 62. It is imperative that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. See In re Extradition of Martinelli Berrocal, 263 F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur Executive Branch has a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future.

And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and surrender him or her to the foreign jurisdiction.").

      2.     <u>Fugitives Must Be Detained Unless They Establish "Special Circumstances" and also Demonstrate that They Are Neither a Flight Risk nor a Danger to the Community</u>

In light of the strong presumption against bail established in <u>Wright</u> and its progeny, international fugitives may not be released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant their release. See, e.g., <u>In re Extradition of Antonowitz</u>, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); <u>In re Extradition of Mainero</u>, 950 F. Supp. 290, 294 (S.D. Cal. 1996). "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." <u>In re Extradition of Kin-Hong</u>, 913 F. Supp. 50, 53 (D. Mass. 1996). Further, the burden of showing "special circumstances" rests upon the fugitive. See, e.g., <u>Salerno</u>, 878 F.2d at 317-18.

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense. See, e.g., <u>Martinelli Berrocal</u>, 263 F. Supp. 3d at 1304; <u>In re Extradition of Beresford-Redman</u>, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that "well-educated and sophisticated" fugitive facing serious charges in foreign country had both "incentive and ability to flee" and therefore presented flight risk); <u>In re Extradition of Patel</u>, 08-430-

MJ-HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering fact that fugitive, physician, had "more than sufficient assets available with which to flee").

Crucially, the "special circumstances" inquiry is separate from considerations of danger to the community or risk of flight. See, e.g., Perez-Cueva, 2016 WL 884877, at *2 (special circumstances must exist in addition to absence of risk of flight). "Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance. Leitner, 784 F.2d at 161; see also Salerno, 878 F.2d at 317-18 (lack of flight risk "is not a criteria for release in an extradition case"). Conversely, a fugitive who poses a danger to the community or a risk of flight should be denied bail, even in the face of special circumstances. See In re Extradition of Siegmund, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

"Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." Mainero, 950 F. Supp. at 294 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir. 1992)). Courts have considered and rejected a lengthy list of would-be special circumstances, including:

- The complexity of the pending litigation, see, e.g., United States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996);
- The fugitive's need to consult with an attorney and/or participate in pending litigation, see, e.g., Smyth, 976 F.2d at 1535-36;
- The fugitive's character, background, and/or ties to the community, see, e.g., In re Extradition of Noeller, No. 17 CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017);

Beresford-Redman, 753 F. Supp. 2d at 1089; In re Extradition of Sidali, 868 F. Supp. 656, 658 (D.N.J. 1994);

- That the fugitive may have been living openly, see, e.g., Leitner, 784 F.2d at 160-61; In re Extradition of Pelletier, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, see, e.g., Noeller, 2017 WL 6462358, at *8-9; Martinelli Berrocal, 263 F. Supp. 3d at 1301-02; United States v. Latulippe, 08-mj-59, 2008 WL 2704230, at *1 (D.N.H. July 3, 2008); In re Extradition of Kyung Joon Kim, No. 04-CV-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004); In re Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1992);

- United States citizenship or the pendency of naturalization or other immigration proceedings, see, e.g., Antonowitz, 244 F. Supp. 3d at 1072; In re Extradition of Knotek, No. 13-CV-9204-BRO-JCG, 2016 WL 4726537, at *7 (C.D. Cal. Sept. 8, 2016); In re Extradition of Orozco, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, see, e.g., Pelletier, 2009 WL 3837660, at *3-4 (allegedly well-respected businessman); In re Extradition of Heilbronn, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, see, e.g., In re Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, see, e.g., Salerno, 878 F.2d at 318; Antonowicz, 244 F. Supp. 3d at 1070; and
- The availability of bail for the same offense in the requesting country, see, e.g., Antonowicz, 244 F. Supp. 3d at 1070; Kyung Joon Kim, 2004 WL 5782517, at *2; Siegmund, 887 F. Supp. at 1386-87; but see In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1216-17 (D. Nev. 1993).

While in certain exceptional cases some of the above may have been deemed a "special circumstance," courts generally determine "special circumstances" to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

### B. Analysis

The United States respectfully requests that the Court detain RIVERA without bond. RIVERA cannot meet his burden and prove that he is neither a significant flight risk nor a danger to the community. Further, even if RIVERA somehow could overcome this hurdle, the United States is not aware of any "special circumstances" that would justify bail in this case.

    1. RIVERA Cannot Meet His Burden and Prove that He Is Neither a Significant Flight Risk nor a Danger to the Community

A fugitive charged with crimes in another country is by definition in flight or deliberately absent from that jurisdiction, and the fact that the fugitive has evaded prosecution in that country is indicative of his risk of flight in the United States. Cf. United

States v. Botero, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same-the avoidance of prosecution.") (citing Jhirad v. Ferrandina, 536 F.2d 478,483 (2d Cir. 1976)). Moreover, in this instance, Mexico seeks RIVERA's extradition on the charge of Femicide, which carries a maximum term of imprisonment of 35 to 60 years. Although Mexico requested RIVERA's provisional arrest based on one count of Femicide, the United States understands that Mexico may add additional charges when it submits the formal request for extradition.[3]

    Given the substantial potential punishment, RIVERA has every incentive to flee the jurisdiction. Given that he already fled Mexico, there is no reason to believe that he will not flee again to avoid prosecution. Thus, no amount of bail would be sufficient to guarantee RIVERA's continued presence in these proceedings.

    In addition to being a flight risk, RIVERA poses a significant danger to the community. RIVERA has been charged with the cold-

---

[3] See, e.g., David Gotfredson, U.S. citizen suspected in murders of 3 women in Tijuana, CBS8 (Dec. 17, 2022, 7:17 AM), https://www.cbs8.com/article/news/local/us-citizen-suspected-in-murders-of-3-women/509-b2a2c321-c696-43ec-b224-6d92aaa66974; Mark Lungariello, US citizen wanted in serial murders of prostitutes in Mexico, N.Y. Post (Nov. 22, 2022, 4:54 PM), https://nypost.com/2022/11/22/us-citizen-wanted-in-serial-murders-of-prostitutes-in-mexico/; Greg Norman, US citizen on the run after killing multiple prostitutes after sex in Mexico, officials say, Fox News (November 22, 2022 1:43 PM EST), https://www.foxnews.com/world/us-citizen-on-run-killing-multiple-prostitutes-mexico-officials-say; Rosario Mosso Castro, Asesino serial de mujeres, Zeta (Nov. 22, 2022), https://zetatijuana.com/2022/11/asesino-serial-de-mujeres/.

blooded murder of Ángela Carolina Acosta Flores, who allegedly went to a hotel room with RIVERA and later was found strangled to death and naked in the bathroom of that hotel room. This accusation demonstrates that RIVERA poses a great danger to the community and should not be released from custody.

    2. <u>RIVERA Cannot Meet His Burden and Establish "Special Circumstances" that Justify Bail</u>

RIVERA's risk of flight and danger to the community are sufficient for the Court to deny any forthcoming application for bail. However, even if the Court were satisfied that he is neither a flight risk nor a danger to the community, the United States is unaware of any "special circumstances" that would justify bail in this case.

Notwithstanding the foregoing, should the Court be inclined to grant bail in this case, the United States respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances." Moreover, to protect the ability of the United States to meet its treaty obligations to the Government of Mexico, the United States also respectfully requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order.

**IV. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court detain RIVERA pending resolution of this extradition proceeding.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiff United States of America, certifies that this brief contains 2,389 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 23, 2023         /s/ John J. Lulejian
                             JOHN J. LULEJIAN
                             Assistant United States Attorney