CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
J. ALEJANDRO BARRIENTOS (Bar No. 346676)
E-Mail: Alejandro_Barrientos@fd.org
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-7568
Facsimile: (213) 894-7556

Attorneys for Defendant
BRYANT RIVERA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:23-MJ-03275-DUTY |
|---|---|
| Plaintiff, | |
| v. | **BRYANT RIVERA'S OPPOSITION TO REQUEST FOR DETENTION; EXHIBIT A** |
| BRYANT RIVERA, | |
| Defendant. | |

Bryant Rivera, through counsel of record, Deputy Federal Public Defender, J. Alejandro Barrientos, submits this opposition to the government's request for detention, ECF No. 7.

                                              Respectfully submitted,

                                              CUAUHTEMOC ORTEGA
                                              Federal Public Defender

DATED: July 10, 2023          By  */s/ J. Alejandro Barrientos*
                                              J. ALEJANDRO BARRIENTOS
                                              Deputy Federal Public Defender
                                              Attorney for Bryant Rivera

# OPPOSITION TO REQUEST FOR DETENTION

## INTRODUCTION

Bryant Rivera is a 30-year-old American citizen and lifelong resident of the Los Angeles area without any prior arrests, warrants, charges or convictions. He is also a devoted and caring son to his parents, Candido and Maria, who both suffer significant health issues. Both are diabetic. Candido is also blind and largely confined to a wheelchair. Maria has almost no formal education, cannot drive, and cannot read. Neither Candido, nor Maria, can speak English. As explained by his sister in her letter to the Court, Mr. Rivera has been his parents sole caregiver for years. *See* Ex. A, Letter from P. Rivera. They are only able to afford housing because Mr. Rivera financially assists them through his years-long employment as a delivery driver. For these reasons and as further explained below, Mr. Rivera requests that he be granted bail subject to the following conditions: (i) he reside with his sister in Lynwood, California, (ii) his sister shall act as third-party custodian, (iii) location monitoring via ankle monitor, (iv) home incarceration with the exception that, with approval from Pretrial Services, Mr. Rivera may go to his parents' apartment in Downey, California, to perform caretaking responsibilities, (v) affidavits of surety by his father and sister, and (vi) any other condition deemed necessary by the court.

## LEGAL STANDARD

The Supreme Court has held that courts may grant bail in extradition proceedings when justified by "special circumstances." *Wright v. Henkel*, 190 U.S. 40, 63 (1903). "The term 'special circumstances' has never been precisely defined . . . ." *Matter of Extradition of Mainero*, 950 F.Supp. 290, 294 (S.D.Cal.1996). However, the Ninth Circuit has offered examples of such circumstances, including, "the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). Nonetheless, courts are "not bound by an exhaustive list of 'special circumstances.' The determination of what factors

2

to consider and how much weight to give them is within the 'sound discretion' of the Court. Moreover, a collective approach can lead to a finding of special circumstances." *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1006 (D. Ariz. 2009) (cleaned up); *see also In re Extradition of Gonzalez*, 52 F.Supp.2d 725, 736 (W.D.La.1999) ("The list of potential 'special circumstances' is not limited to those previously recognized in published decisions."). "The party seeking release on bail must establish that special circumstances exist by a preponderance of the evidence." *Garcia v. Benov*, No. CV 08-07719 MMM CWX, 2009 WL 6498194, at *3 (C.D. Cal. Apr. 13, 2009).[1] Beyond "special circumstances," courts have grafted the Bail Reform Act's concerns about risks of nonappearance and danger to the community on to the "special circumstances" doctrine. As further explained below, Mr. Rivera challenges the consideration of any supposed risk of danger on due process grounds.

## ARGUMENT

**I. THE COURT CAN EXERCISE ITS SOUND DISCRETION TO DETERMINE THAT THE PRECARIOUS HEALTH AND SAFETY OF MR. RIVERA'S PARENTS IS A "SPECIAL CIRCUMSTANCE," ESPECIALLY COMBINED WITH THE OTHER CIRCUMSTANCES OF THIS MATTER.**

As reported by his older sister, Mr. Rivera is his parents' caretaker and financial lifeline. *See* Ex. A, Letter from P. Rivera (explaining, "all the responsibility of taking my parents to their doctor appointments, grocery shopping, running errands, etc., fell onto my brother," and "without him, they will no longer be able to afford housing."). Without Mr. Rivera to care for them, they could end up living on the street or dead. The Court can exercise its sound discretion to determine that such circumstances—the

---

[1] *See also In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1036 n.4 (C.D. Cal. 2006) ("Santos's request for release on bail will be evaluated using a preponderance of the evidence standard."); *Santos v. Thomas*, No. CV 11-06330 MMM, 2012 WL 12964319, at *2 (C.D. Cal. June 29, 2012) ("The party seeking release must establish that special circumstances exist by a preponderance of the evidence.").

precarious health and safety of two elderly and vulnerable Los Angeles residents—are "special," especially when combined with the other circumstances of this case. *See Matter of Requested Extradition of Kirby*, 106 F.3d 855, 864 (9th Cir. 1996) ("Notwithstanding the weaknesses of the 'special circumstances' upon which the district court relied, we hold that such 'circumstances' do exist."); *Wroclawski*, 634 F. Supp. 2d at 1007 ("Based on the evidence in the record and the Government's concession that Petitioner is not a flight risk, in conjunction with the evidence that Petitioner has been on release for nearly a year without incident, the Court considers this to be one special circumstance warranting release.").

  **Mr. Rivera's Parents.** Candido Rivera, Mr. Rivera's father, is a 65-years-old retired welder who did not complete high school. He is also blind, diabetic, and mostly limited to a wheelchair because of an accident in which he shattered his ankle. He has also suffered myriad other health problems. Taking two examples, Mr. Rivera's sister recounts how Mr. Rivera saved their father's life when he suffered kidney failure, and how her father later had a heart surgery resulting in temporary hospice care:

> When my dad's kidney's collapsed and the water retention was asphyxiating my dad's heart, my brother had to act fast and get him to the hospital to save his life. My father also had a heart surgery soon after because his arteries were completely blocked, he was put in hospice for several months and was in dialysis until recently.

Ex. A, Letter from P. Rivera. Adding to all of these difficulties, Candido is not fluent in English, making it impossible for him to manage his finances or medical care, much less provide his own transportation or other basic needs such as purchasing groceries. He receives modes monthly retirement benefits of just under $2,000 per month. It is unrealistic to expect him to return to work to make up for the loss of his son's income. Candido is willing to act as a surety to ensure that Mr. Rivera can continue to assist him with basic life activities.

Mr. Rivera's mother, Maria Rivera, is a 62-years-old lifelong housekeeper with almost no formal education. She cannot read, drive, or speak English. Like her husband, she is also diabetic. For these reasons, she is similarly unable to manage her own finances or medical care. Nor is she able to independently care for her husband. It is also unrealistic that she would be able to find employment to make up for the loss of her son's income, given that she has never worked, cannot drive, speak English, or read.

***A Devoted Son.*** Given his parents' significant health issues, lack of education, and inability to speak English, Mr. Rivera and his sister had to step up to ensure their basic needs are met. But, as explained by Mr. Rivera's sister, this responsibility has fallen entirely on Mr. Rivera since she started her own family:

> After I moved out to live with my husband, all the responsibility of taking my parents to their doctor appointments, grocery shopping, running errands, etc., fell onto my brother. He became the eyes for both of our parents because my father is blind and my mother is illiterate, any medical documents or forms that needed to be read or completed, my brother handled. . . . . Bryant also provides financial support for our parents, without him, they will no longer be able to afford housing.
>
> As parents age without a plan, they become like children, a burden that no son should have to carry on his shoulders, but Bryant did all that he could to take care of their needs and support them. I am thankful that Bryant has been taking care of our parents for years. I have a family of my own now to prioritize, including 2 children who are in elementary school. I don't know what I would do if Bryant is not around to care for our parents.

Ex. A, Letter from P. Rivera.

***Other Circumstances.*** Finally, other circumstances in this matter support a finding of "special circumstances," including Mr. Rivera's overwhelmingly strong ties

to the community, the complete absence of any prior criminal history, and the trust that his sister has demonstrated by agreeing to act as a third party custodian and have Mr. Rivera live with her family despite the seriousness of the allegations against him.

## II. MR. RIVERA CANNOT BE DETAINED BASED ON CONCERNS FOR THE SAFETY OF THE COMMUNITY.

Special circumstances aside, the Court should not detain Mr. Rivera based on concerns for the safety of the community. Doing so would violate his right to due process under the Fifth Amendment. And even if the Court considers danger, there is no evidence that Mr. Rivera poses an immediate danger to anyone in the Central District of California or the United States more broadly, as Mr. Rivera has peacefully resided in the Los Angeles area for three decades. To the extent the Court is concerned about the safety of sex workers in Tijuana, a combination of conditions can ensure their safety.

### A. The Court cannot detain Mr. Rivera based on safety concerns because doing so would violate his right to due process.

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (cleaned up). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also O'Connor v. Donaldson*, 422 U.S. 563, 574-75 (1975) ("Nor is it enough that Donaldson's original confinement was founded upon a constitutionally adequate basis . . . it could not constitutionally continue after that basis no longer existed."); *Jones v. United States*, 463 U.S. 354, 368 (1983) (holding that the nature and duration of confinement must bear a reasonable relation to the purpose of the confinement); *Foucha*, 504 U.S. at 79 (same).

Illustrating the requisite connection between the purpose and duration of confinement, the Supreme Court in *Jackson v. Indiana* held that due process prohibits states from confining incompetent criminal defendants without considering whether they are capable of being rehabilitated to the point of competency, explaining:

> We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

406 U.S. at 738.

Similarly, detaining a person in extradition proceedings because of safety concerns is unmoored from the purpose of extradition. As the government correctly notes, the purpose of extradition is to ensure that the U.S. government fulfills its "obligation to make [a] surrender; an obligation which it might be impossible to fulfill if release on bail were permitted." ECF No. 7, at 4-5, *quoting Wright*, 190 U. S. at 62; *see also* 18 U.S.C. § 3184 (not directing courts to consider safety of the community in determining extradition). This singular purpose distinguishes extradition proceedings from criminal proceedings—which are governed by statutes, like the Bail Reform Act and 18 U.S.C. § 3553, that direct courts to consider the safety of the community and the need to deter future criminal acts of a defendant. *See United States v. Salerno*, 481 U.S. 739, 747 (1987) (upholding the constitutionality of the Bail Reform Act in part because, "The legislative history . . . indicates that Congress did not formulate the pretrial detention provisions as punishment . . . . Congress instead perceived pretrial detention as

a potential solution to a pressing societal problem.").[2] Given the singular purpose of extradition proceedings, there is no relation—much less a "reasonable relation"—between the need for the U.S. government to abide by its treaty obligations and a relator's supposed danger to the community. *Jackson*, 406 U.S. at 738.

### B. Mr. Rivera is not a danger to anyone in the Central District of California or the United States more broadly.

Even if the Court considers danger, it should not detain Mr. Rivera. According to the American government, the Mexican government has had reason to associate a U.S. citizen and California resident using the name "Bryant Rivera" with the death of the alleged victim since January of 2022. *See* ECF No. 1, at 3-4.[3] Nonetheless, a Mexican judge did not issue a warrant for Mr. Rivera's arrest until November of 2022. *See id.*, at 2. And despite the seriousness of the unproved allegations against him, American law enforcement did not arrest Mr. Rivera until June of 2023—approximately 18 months after Mexican authorities were given the name "Bryant Rivera," and 6 months after a Mexican judge issued an arrest warrant. Whatever the cause of these delays, the mere fact that they were permitted to occur betray any claim that Mr. Rivera poses an immediate danger to anyone, especially in the Central District of California, where Mr. Rivera has peacefully lived for thirty years.

Any claim of danger is further undermined and overwhelmingly refuted by Mr. Rivera's spotless criminal history both before and after the events alleged in the complaint. Probation & Pretrial Services conducted a background check using records maintained by the Federal Bureau of Investigation, the California Bureau of Criminal

---

[2] The government correctly notes that such criminal statutes do not apply in extradition proceedings. ECF No. 7, at 2 n.2.

[3] (claiming, "On or about January 28, 2022, the Victim's mother provided a statement to Mexican authorities and related the following facts: . . . The Victim's boyfriend was not able to find the Victim. However, he told the Victim's mother that one of the women in the bar said that she had seen the Victim with a male client . . . . The woman added that she knew the Victim's client as "Bryant Rivera," and that he was a 'gringo.'").

Identification and Information, and the National Crime and Information Center. Despite this extensive search, they failed to find any record of any arrest, warrant, charge, or conviction for Mr. Rivera.

Beyond that, Mr. Rivera's sister, who has maintained a close relationship with Mr. Rivera throughout his life, is also willing to have Mr. Rivera live with her husband and two children at their home despite the seriousness of the allegations against him. Such trust is a strong indicator that he does not pose a danger to his current community.

### C. To the extent there is a danger to sex workers in Tijuana, a combination of conditions can ensure their safety.

Given Mr. Rivera's decades-long record of abiding by American law, any concerns about danger would arise solely from the allegation that he committed femicide of a sex worker in Tijuana. Indeed, the government's argument on danger is solely based on the alleged events in Tijuana. ECF No. 7, at 10-11. And there is no evidence that Mr. Rivera has ever posed a danger to anyone outside of that context.[4] Yet, Mr. Rivera is currently in Los Angeles—approximately 135 miles away from Tijuana. And a combination of conditions can ensure that he does not return to Tijuana during these extradition proceedings. Mr. Rivera can be placed on home incarceration with location monitoring via ankle monitor. His sister, who is a stable and responsible mother of two, has additionally agreed to: (i) permit Mr. Rivera to live in her home with her husband and two children who are in elementary school, (ii) act as a third-party custodian, and (iii) act as a surety. Mr. Rivera's sister will have a strong incentive to report any violations, as she has substantial financial obligations that would be endangered if she

---

[4] The report authored by Probation & Pretrial Services makes the unfounded claim that Mr. Rivera's supposedly "unknown mental health and substance use history" are a factor indicating danger to the community, This unsupported speculation is refuted by the facts detailed in the same report, namely that Mr. Rivera's father "informed [Probation & Pretrial Services] the defendant does not have a history of mental health or substance use issues." It is also refuted by Mr. Rivera's sister. *See* Ex. A. ("[H]e never acquired bad habits, he hated alcohol because of our dad's drinking problem . . . .").

forfeited any money, including her ongoing financial support of her children, her mortgage, and a recent car loan.

### III. MR. RIVERA IS NOT A FLIGHT RISK.

Finally, Mr. Rivera has none of the hallmarks of a person typically deemed to pose a risk of nonappearance. He is a U.S. citizen and lifelong resident of the Central District of California who has never failed to appear for court, much less been arrested for or even accused of prior crimes. He has had stable housing and employment for years. As discussed above and in his sister's letter, he has incredibly strong family ties and obligations in Los Angeles. His foreign travel is minimal; it does not appear that he has ever been to any country other than the two countries involved in the instant extradition proceedings. Beyond that, it is extremely unlikely that Mr. Rivera would be able to flee if he is (i) subject to electronic monitoring and (ii) required to live with his sister who will additionally act as a third party custodian. As noted above, Mr. Rivera's sister has strong incentives to ensure her brother's compliance and quickly report any noncompliance. And though the allegations against Mr. Rivera are serious, Mexican law is not as punitive as American law. To the contrary, according to the government, the punishment for femicide in Mexico is 35 to 60 years imprisonment—not the death penalty or even life imprisonment. ECF No. 7, at 10.

//
//
//
//
//
//
//

## CONCLUSION

For the stated reasons, Mr. Rivera requests that he be granted bail subject to the following conditions: (i) he reside with his sister in Lynwood, California, (ii) his sister shall act as third-party custodian, (iii) location monitoring via ankle monitor, (iv) home incarceration with the exception that, with approval from Pretrial Services, Mr. Rivera may go to his parents' apartment in Downey, California, to perform caretaking responsibilities, (v) affidavits of surety by his father and sister, and (vi) any other condition deemed necessary by the court.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 10, 2023      By  /s/ J. Alejandro Barrientos
                              J. ALEJANDRO BARRIENTOS
                              Deputy Federal Public Defender
                              Attorney for Bryant Rivera